UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES WILLIAM V.,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | Civil Action No. 25-2602 (JXN)<br><br>**OPINION AND ORDER** |

**NEALS, District Judge**

Before the Court pursuant to § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), is Plaintiff Charles V.'s[1] ("Plaintiff") application for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 404–34, *et seq*. Plaintiff appeals from the Commissioner of Social Security's ("Commissioner") final decision denying his application. After carefully considering the entire record, including the administrative record, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

Plaintiff was born in 1976. (Tr. 213.[2]) He has a bachelor's degree (*id.* at 54), and previously worked as a heating and air conditioning installer and servicer and as a janitor. (*Id*. at 81). Plaintiff applied for DIB on August 23, 2022, with an onset of disability of August 24, 2021. (*Id.* at 110–

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] References to "Tr. _" are to pages of the record filed with the Court and certified by the Social Security Administration on May 6, 2025.

11, 213–19.) His claim was denied initially (*id.* at 120–24), and after reconsideration (*id.* at 135–42). Thereafter, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on July 19, 2023. (*Id.* at 143–45.)

A hearing was held before ALJ Sharon Allard on March 19, 2024. (*Id.* at 40–88.) Plaintiff appeared and testified *pro se*. (*Id.* at 43.) In a September 27, 2024 decision, the ALJ found Plaintiff not disabled. (ALJ Op., ECF No. 5-2 at *16–28.[3]) On November 8, 2024, Plaintiff requested the Appeals Council review the ALJ's decision. (Tr. 207–12.) The Appeals Council denied review on February 14, 2025. (*Id.* at 1–3.) This was the final act of the Commissioner. This appeal followed and is ripe for review.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing DIB applications, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). The Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 564–65 (1988); *Bailey v. Comm'r of Soc. Sec.*, 354

[3] Pincites preceded by an asterisk (*) use ECF pagination.

F. App'x 613, 616 (3d Cir. 2009); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

Substantial evidence is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *K.K.*, 2018 WL 1509091, at *4 ("[T]he district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." (alterations in original) (citation omitted)).

Nevertheless, the Third Circuit cautions that substantial evidence is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)); *see Cotter v. Harris* (*Cotter I*), 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record."). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Baker v. Colvin*, No. 12-7251, 2014 WL 2652938, at *4 (D.N.J. June 13, 2014) (citing *Schonewolf*, 972 F. Supp. at 284–85).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [their] analysis," the decision must nevertheless contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter I*, 642 F.2d at 705; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence." (internal citation omitted)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris* (*Cotter II*), 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter I*, 642 F.2d at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Schonewolf*, 972 F. Supp. at 284–85 (quoting *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

After reviewing the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119–20; *Podedworny v. Harris*, 745 F.2d 210,

221–22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. ex rel. Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22 (citation omitted); *see A.B.*, 166 F. Supp.3d at 518.

"An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). "When a claimant appears at a hearing without counsel, the ALJ must 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Id.* (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)); *see also Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (noting that an ALJ must "assume a more active role when the claimant is unrepresented."); *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) ("ALJs have a duty to develop a full and fair record in social security cases."). While the Third Circuit does not "prescribe any particular procedures that an ALJ must follow," the ALJ must sufficiently "develop the record." *Reefer*, 326 F.3d at 380. "[C]ourts determine the adequacy of an ALJ's investigation on a case-by-case basis." *Id.* (citing *Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983)).

**B. Sequential Evaluation Process**

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of

proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At Step One, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At Step Two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to Step Three.

At Step Three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months and is eligible for benefits. *Id.* § 404.1509. If not, the ALJ proceeds to Step Four.

At Step Four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e)–(f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At Step Five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so,

then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. DISCUSSION

### A. The ALJ's Five-Step Sequential Evaluation Process

Here, at Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date of his disability. (ALJ Op. at 3.) The ALJ noted Plaintiff had earnings for several months after his alleged onset date. (*Id.*) While the ALJ observed Plaintiff's post-onset earnings "may demonstrate the ability to perform substantial gainful activity," the ALJ continued with the sequential evaluation process. (*Id.*)

At Step Two, the ALJ found Plaintiff suffered from the following severe impairments: "lumbar spinal stenosis; osteoarthritis; trauma and stressor related disorders; anxiety and obsessive-compulsive disorder; depression; and status post-surgical repair of a torn meniscus." (*Id.*)

At Step Three, however, the ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 5.)

At Step Four, the ALJ determined Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he can: lift and carry up to ten pounds occasionally and less than ten pounds frequently; stand/walk two hours and sit six hours in an eight-hour day; occasionally kneel, stoop, crouch, balance on wet, moving, or uneven surfaces, and climb ramps and stairs; never climb ladders, ropes, or scaffolds or work around hazards, including moving mechanical parts or unprotected heights; understand and execute simple, routine tasks that do not involve production requirements; have occasional contact with co-workers, supervisors, and the public but not with tasks involving direct customer service; make simple decisions and adapt to occasional changes in essential work

> tasks; perform work allowing him to be off task 10% of the workday and absent once per month due to his impairments.

(*Id.* at 7.)[4]

At Step Five, relying on the testimony of the vocational expert, the ALJ found Plaintiff would be able to perform the requirements of representative sedentary occupations such as:

> (1) document preparer (Dictionary of Occupational Titles code 249.587-018), which is work with an SVP of 2 and approximately 14,000 jobs in the national economy; (2) lens inserter (Dictionary of Occupational Titles code 713.687-026), which is work with an SVP of 2 and approximately 9,000 jobs in the national economy; and (3) addresser (Dictionary of Occupational Titles code 209.587-010), which is work with an SVP of 2 and approximately 6,00 jobs in the national economy.

(*Id.* at 12.)

### B. Issues on Appeal

Plaintiff argues the ALJ failed to properly evaluate the medical opinion evidence, determine Plaintiff's residual functional capacity, or consider Plaintiff's testimony. (Pl. Br. at 1.)

#### *i. Plaintiff's Headaches*

First, Plaintiff claims the ALJ erred at Step Two in concluding Plaintiff's "headaches are non-severe and do not result in more than a minimal limitation in Plaintiff's ability to perform work-related activities." (ALJ Op. at 20.) Plaintiff testified to having "multiple migraine headaches per week" and seeking treatment. (*Id.* at 18.) Plaintiff stated "his migraine medication has reduced the intensity of his migraines but not the frequency." (*Id.*) Plaintiff went to the emergency room for a migraine in March 2022. (*Id.*) In May 2023, Plaintiff "presented for treatment of migraines," but his "examination was relatively normal, including normal sensation, normal reflexes, normal motor strength, and normal coordination." (*Id.*) Plaintiff "reported that his medication was not

[4] The ALJ also found opinions provided by non-examining state agency medical consultants unpersuasive (*id.* at 10–11), which Plaintiff does not dispute on appeal (*See* Pl. Br. at 16 n.28, ECF No. 10.)

providing relief, so his provider prescribed a new medication." (*Id.*) After taking his new medication for a few months, Plaintiff reported having shorter and fewer migraines. (*Id.*) Accordingly, the ALJ concluded Plaintiff's "condition does not result in more than minimal limitation in [his] ability to perform basic work activities." (*Id.*)

Plaintiff's physician, Trobjoern Nygaard ("Nygaard") offered a May 2023 opinion about Plaintiff's migraines. (*Id.*) Nygaard "identified symptoms including throbbing pain, photosensitivity, mood changes, and nausea/vomiting and noted that his triggers include bright lights, noise, and stress." (*Id.*) Nygaard "further observed that [Plaintiff] has three to five headaches per week which can last a week or longer," and that switching medications did not help. (*Id.*) Nygaard stated "when a headache occurs, [Plaintiff] must find a dark, quiet place to rest, and that when a headache occurs, he generally would be precluded from performing even basic work activities." (*Id.*) Nygaard "found additional limitations, including a need to avoid bright light, noise, fumes, and temperature extremes." (*Id.*) Nygaard therefore "concluded that [Plaintiff's] symptoms frequently would interfere with attention and concentration and cause him to be absent from work more than three times per month." (*Id.*)

The ALJ found Nygaard's opinion "generally inconsistent with the evidence to the extent that it overstates the claimant's limitations." (*Id.*) Further, the ALJ noted Nygaard's opinion did "not account for the improvement in symptoms that [Plaintiff] reported in August of 2023 following a change in his medication." (*Id.*) Accordingly, the ALJ found Nygaard's opinion unpersuasive. (*Id.*)

Plaintiff claims the ALJ discounted Nygaard's opinion "solely because Plaintiff had some response to treatment" (Pl.'s Br. at 22.) But, according to Plaintiff, "[n]o medical authority in the record contradicts [Nygaard's] opinion and there is no evidence [Plaintiff] had any improvement

of his headaches since then." (*Id.*) And "[i]f the ALJ had any questions about the extent of any improvement," Plaintiff asserts the ALJ "could easily have contacted the treating neurologist or advised the *pro se* [Plaintiff] to ask his doctor to address this concern." (*Id.*) Moreover, Plaintiff contends the ALJ incorrectly "discounted any finding that [Plaintiff's] headaches are severe because physical examinations were generally normal." (*Id.* at 23.)

***ii. De Alwis's Opinion***

Next, Plaintiff argues the ALJ erred in rejecting the opinions set forth by Plaintiff's board-certified treating psychiatrist Dr. Jayakanthi de Alwis ("de Alwis") at Step Four. (*See id.* at 14–20.) de Alwis identified symptoms, including "hostility or irritability; persistent, irrational fears; difficulty thinking or concentrating; persistent anxiety; and intense and unstable interpersonal relationships." (ALJ Op. at 9.) de Alwis "offered the opinion that the claimant does not have reduced intellectual functioning, but workplace stress can lead to anxiety, depression, and lack of focus and concentration." (*Id.*) de Alwis further opined that Plaintiff had: moderate limitations to his understanding and memory; "primarily moderate limitations with respect to social interactions"; "marked limitations of his ability to perform activities with a schedule and be consistently punctual, work in coordination with or near others without being distracted by them, complete a workday without interruption from psychological symptoms, and perform at a consistent pace without unreasonable rest periods"; and "marked limitations of his ability to respond appropriately to workplace changes, set realistic goals, and travel to unfamiliar places or use public transportation." (*Id.*)

The ALJ stated that, "[a]lthough supported by personal treatment of [Plaintiff]," de Alwis's "opinion is generally inconsistent with the evidence to the extent that it overstates [Plaintiff's] limitations. Years of relatively normal mental status examinations and conservative treatment are

inconsistent with [de Alwis's] findings of marked limitations in any area of mental functioning." (*Id.*) The ALJ was "not persuaded by [de Alwis's] opinion due to this inconsistency." (*Id.*)

Plaintiff argues the record confirmed de Alwis's findings. (Pl.'s Br. at 18.) Thus, Plaintiff contends the ALJ erred in ignoring the consistency between de Alwis's opinions and the record. (*Id.*) Plaintiff also claims the ALJ failed to explain why she rejected de Alwis's opinions as inconsistent with Plaintiff's supposed "conservative" treatment. (*Id.* at 18–19.)

***iii. The RFC***

As discussed above, the ALJ found Plaintiff had the RFC "to perform sedentary work" with some restrictions (ALJ Op. at 7), which the ALJ found "supported by [Plaintiff's] history of conservative treatment, aside from a knee surgery in December of 2023," (*id.* at 11). But Plaintiff argues the ALJ did not reference "any medical findings or even persuasive non-medical findings," and instead based Plaintiff's RFC "on her lay perception of the clinical and objective evidence." (Pl.'s Br. at 27.)

***iv. Plaintiff's Testimony***

Finally, Plaintiff asserts the ALJ failed to properly consider Plaintiff's testimony at Step Four. (*See id.* at 28–31.) In determining Plaintiff's RFC, the ALJ recounted Plaintiff's testimony. (*See* ALJ Op. at 7–8.) While Plaintiff testified to having "emotional outbursts"; being "argumentative," "confrontational," and "hypervigilant"; and experiencing "sweats" and an elevated heartbeat, the ALJ noted Plaintiff also "acknowledged that mental health medication has resulted in improvement in some of these symptoms, and he has never been hospitalized or sought emergency department treatment for mental health symptoms." (*Id.* at 8.) Plaintiff further testified his 2021 back injury and 2023 knee surgery "caused him to miss days from work and preclude prolonged standing, walking, sitting, climbing, pushing, and pulling." (*Id.*) Plaintiff claimed "he

tends to avoid crowds due to anxiety and he uses a cane and crutches prescribed by a physician." (*Id.*) Yet the ALJ remarked Plaintiff "acknowledged his ability to complete some activities of daily living, including dressing and caring for personal hygiene, driving a car, and going out alone. [Plaintiff] described his ability to follow written and spoken instructions as 'okay I guess.'" (*Id.*)

After considering Plaintiff's testimony, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) But the ALJ concluded Plaintiff's "statements about the intensity, persistence, and limiting effects of [his] symptoms" were "inconsistent with the lack of evidence of extensive treatment of [Plaintiff's] physical impairments and with his history of unremarkable mental status examinations and only conservative mental health treatment." (*Id.*)

Plaintiff disputes the ALJ's characterizations of Plaintiff's treatment for his physical conditions as "not extensive," his mental health treatment as "conservative," mental status examination as "unremarkable." (Pl.'s Br at 29.) Plaintiff further contends the ALJ's evaluation of Plaintiff's subjective statements is not supported by substantial evidence. (*Id.*)

### C. The ALJ Did Not Err in Denying Plaintiff's Application

#### *i. Any Error at Step Two was Harmless*

The Court starts with Plaintiff's assertion that the ALJ erred at Step Two in discounting Plaintiff's headaches and Nygaard's opinion. Step Two "is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Plaintiff has the burden of showing a severe impairment, though this burden "is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). A "severe" impairment or combination of impairments is "something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to

work.'" *Id.* (quoting SSR 85–28, 1985 WL 56856, at *3 (Jan. 1, 1985)). "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant." *Id.* "The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." *Id.* at 360–61.

Here, the ALJ found Plaintiff suffered from multiple severe impairments and several non-severe impairments. Thus, the ALJ concluded Plaintiff met Step Two and continued in the sequential analysis. It also appears that the ALJ considered Plaintiff's holistic medical record, including both severe and non-severe impairments, when fashioning Plaintiff's RFC.

Plaintiff argues the ALJ erred in characterizing Plaintiff's migraines as non-severe and discounting Nygaard's opinion about the same. But, "[b]ecause the ALJ found in [Plaintiff's] favor at Step Two, even if [s]he had erroneously concluded that some of [Plaintiff's] other impairments were non-severe, any error was harmless." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

***ii. Substantial Evidence Supported the ALJ's RFC Determination***

At Step Three, the ALJ compares the medical evidence of Plaintiff's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If Plaintiff does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether Plaintiff retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(d). Plaintiff has the burden of demonstrating an inability to return to his past relevant work. *Burnett*, 220 F.3d at 118 (citing *Adorno*, 40 F.3d at 46).

Here, the ALJ found at Step Three that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (ALJ Op. at 5–7.) The ALJ concluded Plaintiff's impairments did not meet or equal listings 1.15, *Disorders of the skeletal spine resulting in compromise of a nerve root(s)*, or 1.16, *Lumbar spinal stenosis resulting in compromise of the cauda equina*, because the medical evidence did not reflect Plaintiff's "need for an assistive device listed in 1.15(D)(1) and (2) or 1.16(D)(1) or (2), or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements, as required by 1.15(D)(3)." (*Id.* at 5.) The ALJ observed that Plaintiff "did not allege that he is unable to use his upper extremities" or produce "medical evidence of a need for one of the identified assistive devices." (*Id.*)

Next, the ALJ found Plaintiff's mental impairments "considered singly and in combination, do not meet or medically equal the criteria of listings 12.06, *Anxiety and obsessive-compulsive disorders*, and 12.15, *Trauma-and stressor-related disorders*." (*Id.*) The ALJ noted Plaintiff's "mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning." (*Id.*) The ALJ remarked that "[a]n extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." (*Id.* at 5–6.)

As to Plaintiff's understanding, remembering or applying information, the ALJ found Plaintiff has a moderate limitation. (*Id.* at 6.) The ALJ cited Plaintiff's description of his ability to follow written and spoken instructions as "okay I guess," and referenced years of mental status examinations that did not identify an impairment of memory or concentration. (*Id.*) The ALJ

concluded Plaintiff's evidence "does not demonstrate more than a moderate limitation" in understanding, remembering, or applying information. (*Id.*)

As to interacting with others, the ALJ similarly found only moderate limitation. (*Id.*) The ALJ considered Plaintiff's testimony "that he has emotional outbursts and has been accused of being argumentative and confrontational" and "that he tends to avoid crowds due to anxiety." (*Id.*) The ALJ noted, however, that Plaintiff's "mental status examinations did not identify significant difficulties relating to others, and some mental status examinations noted his euthymic mood and cooperative behavior." (*Id.*) The ALJ concluded Plaintiff's "evidence reveals a moderate limitation of his ability to interact with others." (*Id.*)

The ALJ also found moderate limitation in concentrating, persisting or maintaining pace. (*Id.*) The ALJ relied on Plaintiff's acknowledgement "that he finishes what he starts and did not allege a significant limitation in this area," and years of "unremarkable mental status examinations" that did not identify an "impairment of attention or concentration and typically noted his linear and goal directed thought process." (*Id.*)

The ALJ next found Plaintiff has a moderate limitation in adapting or managing oneself. (*Id.*) The ALJ noted Plaintiff's testimony that he is "hypervigilant, sweats, and his heart beats fast at times due to his mental impairments." (*Id.*) The ALJ compared this testimony with Plaintiff's acknowledgement of his ability to "complete some activities of daily living, including dressing and caring for personal hygiene, driving a car, and going out alone." (*Id.*) The ALJ concluded that "years of relatively normal mental status examinations and conservative outpatient treatment do not demonstrate more than a moderate limitation of his capacity to adapt or manage oneself." (*Id.*)

The ALJ, accordingly, determined Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation and thereby failed to satisfy the Paragraph B

criteria. (*Id.*) The ALJ also found the evidence did not establish the existence of a mental disorder sufficiently "serious and persistent" to satisfy the Paragraph C criteria. (*Id.*) The ALJ based this finding on the lack of record evidence showing Plaintiff "received treatment or mental health therapy in a highly structured setting." (*Id.*) The ALJ concluded that "[b]ecause [Plaintiff's] severe mental impairments do not satisfy the B criteria or the C criteria of any listed impairment," none of Plaintiff's impairments "meet or medically equal a listing." (*Id.* at 6–7.)

The ALJ further noted her Paragraph B analysis was not an RFC assessment. (*Id.* at 7.) Rather, the RFC at Steps Four and Five required "a more detailed assessment of the areas of mental functioning." *Id.*

Turning to Step Four, the RFC assessment, the ALJ observed that,

> In considering [Plaintiff's] symptoms, the [ALJ] must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce [Plaintiff's] pain or other symptoms.
>
> [O]nce an underlying physical or mental impairment(s) that could reasonably be expected to produce [Plaintiff's] pain or other symptoms has been shown, the [ALJ] must evaluate the intensity, persistence, and limiting effects of [Plaintiff's] symptoms to determine the extent to which they limit [Plaintiff's] work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities.

(*Id.* at 7.)

The ALJ restated Plaintiff's complaints and medical history[5] and found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged

[5] Specifically, the ALJ found,

> [Plaintiff] alleged that he has lower back pain, sciatic nerve damage, pain in his bilateral hips and knees, and anxiety. He testified that his mental health problems began in 2017 and he was diagnosed with post- traumatic stress disorder, anxiety, and obsessive-compulsive disorder. [Plaintiff] explained that he has emotional outbursts and has been accused of being argumentative and

symptoms." (*Id.* at 8.) But the ALJ found Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms" were not "entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

The ALJ summarized her review of Plaintiff's medical records and noted the following. In December 2021, Plaintiff reported "he could not participate in group therapy because he was returning to work." (*Id.*) A mental status examination in 2022 was "unremarkable, other than a depressed mood," and Plaintiff presented with "intact memory and concentration, cooperative behavior, and a linear and logical thought process." (*Id.*) A November 2022 screening "indicated minimal depression." (*Id.*) Plaintiff's mental status examinations throughout 2023 were "relatively normal"; Plaintiff "typically presented with a logical and goal directed thought process, fair insight and judgment, and intact memory." (*Id.*) Plaintiff's mental status examinations in 2024 also "were generally unremarkable"; Plaintiff "typically presented with a euthymic mood, good impulse control, good insight and judgment, and a linear and goal directed thought process." (*Id.*) Plaintiff managed his mental health symptoms "with medication and therapy." (*Id.*)

The ALJ reviewed de Alwis' June 14, 2023 report based on treating Plaintiff for post-traumatic stress disorder ("PTSD") and depression. (*Id.* at 9.) de Alwis identified Plaintiff as

---

> confrontational. He testified that he is hypervigilant, sweats, and his heart beats fast at times due to his mental impairments. However, [Plaintiff] acknowledged that mental health medication has resulted in improvement in some of these symptoms, and he has never been hospitalized or sought emergency department treatment for mental health symptoms.
>
> He testified that he injured his back while working in August of 2021 and opted to have injections in his back instead of surgery. [Plaintiff] testified that he also had right knee surgery in December of 2023.
>
> He alleged that his impairments caused him to miss days from work and preclude prolonged standing, walking, sitting, climbing, pushing, and pulling. [Plaintiff] asserted that he tends to avoid crowds due to anxiety and he uses a cane and crutches prescribed by a physician. However, he acknowledged his ability to complete some activities of daily living, including dressing and caring for personal hygiene, driving a car, and going out alone. [Plaintiff] described his ability to follow written and spoken instructions as "okay I guess."

(*Id.* at 7–8.)

showing symptoms including: “hostility or irritability; persistent, irrational fears; difficulty thinking or concentrating; persistent anxiety; and intense and unstable interpersonal relationships.” (*Id.*) Yet the ALJ specifically referenced de Alwis’ notations that Plaintiff “never required hospitalization or inpatient treatment for his symptoms.” (*Id.*) The ALJ noted that the only reported side effect of Plaintiff’s mental health medication was “some drowsiness”; and that Plaintiff’s symptoms dated back only to August 2022. (*Id.*) The ALJ also referenced de Alwis’ finding that Plaintiff had “only moderate limitations” in understanding and memory, “primarily moderate limitations” with respect to social interactions, and “a marked limitation of his capacity to accept instructions and respond appropriately to criticism from supervisors.” (*Id.*) de Alwis also concluded Plaintiff had “marked limitations” of his ability to “perform activities with a schedule and be consistently punctual, work in coordination with or near others without being distracted by them, complete a workday without interruption from psychological symptoms, and perform at a consistent pace without unreasonable rest periods.” (*Id.*) The ALJ further noted de Alwis observed “marked limitations” of Plaintiff’s ability to “respond appropriately to workplace changes, set realistic goals, and travel to unfamiliar places or use public transportation.” (*Id.*) Further, de Alwis concluded Plaintiff would be absent from work more than three times per month due to his impairments. (*Id.*)

The ALJ found de Alwis’s opinion, although supported by personally treating Plaintiff, “generally inconsistent with the evidence” because it “overstate[d] [Plaintiff’s] limitations.” (*Id.*) Instead, the ALJ found Plaintiff’s “[y]ears of relatively normal mental status examinations and conservative treatment” as “inconsistent with Dr. de Alwis’s findings of marked limitations in any area of mental functioning.” (*Id.*) Consequently, de Alwis’s opinion did not persuade the ALJ. (*Id.*)

The ALJ reviewed prior administrative determinations of Plaintiff's limitations, both at the initial and reconsideration stages. (*Id.* at 11.) However, the ALJ concluded those prior determinations were "unsupported by personal examinations of" Plaintiff and "inconsistent with the medical evidence discussed above to the extent that they *understate* [Plaintiff's] limitations." (*Id.* (emphasis added).)

The ALJ noted the following medical records regarding Plaintiff's physical impairments. (*Id.* at 10.) In October 2021, Plaintiff attended a neurology appointment with "an antalgic gait and atrophy of his right thigh, but the remainder of the examination was unremarkable." (*Id.*) After imaging in 2021 "revealed mild spondylosis, herniated and bulging discs, and degenerative changes in the lumbar spine," Plaintiff was prescribed medication and referred for acupuncture in November 2021. (*Id.*) Later that month, Plaintiff received acupuncture treatments for lumbar radiculopathy. (*Id.*) In June 2023, Plaintiff walked with a cane and "presented with edema and tenderness in his right knee but [otherwise] had full range of motion." (*Id.*) Plaintiff's physician recommended Plaintiff keep using a cane and referred him for an x-ray. (*Id.*) A July 2023 examination was "unremarkable"; Plaintiff had "a steady gait and no weakness or tenderness upon musculoskeletal examination." (*Id.*) Plaintiff's September 2023 examination was "relatively normal, aside from limited range of motion and tenderness in [Plaintiff's] right knee." (*Id.*) Two months later, Plaintiff "underwent a right knee arthroscopy and partial medial meniscectomy, after imaging confirmed a medial meniscus tear, a mild sprain, and an associated cyst." (*Id.*) Plaintiff sought treatment for right knee pain in April 2024, reporting that he never tried physical therapy after his December 2023 surgery "but had an overall 75% improvement of pain and function." (*Id.*) At the time, Plaintiff's physician noted "right knee swelling, right quadriceps atrophy, tenderness to palpation, and guarding that prevented full assessment of range of motion." (*Id.*) Plaintiff's

doctor prescribed physical therapy. (*Id.*) Also in April 2024, Plaintiff's physical therapist noted Plaintiff's "minimally antalgic gait, mild edema at the left knee, and decreased range of motion in his bilateral knees." (*Id.*)

Plaintiff's wife, Lynda V. ("Ms. V."), completed a third-party function report on October 21, 2022, noting Plaintiff's "difficulty putting on socks and shoes" and requiring "limited assistance to shower." (*Id.*) Ms. V. observed that Plaintiff's physician prescribed the use of a cane in 2021 for prolonged walking and standing, but Plaintiff "no longer prepares meals due to difficulty standing." (*Id.*) Additionally, Ms. V indicated that Plaintiff "cannot complete household chores," but he can drive. (*Id.*) Ms. V. opined that Plaintiff cannot lift "even ten pounds and can only climb one flight of stairs"; and concluded that Plaintiff "can sit for five minutes; stand and kneel less than a minute; and walk a few steps." (*Id.*) Ms. V. averred that "illness, medical appointments, and surgeries have made maintaining suitable, consistent employment an impossible task for him to achieve." (*Id.*)

However, the ALJ found Ms. V.'s opinion "inconsistent with the evidence to the extent that it overstates [Plaintiff's] limitations." (*Id.*) Rather, the ALJ concluded "[t]he limited evidence of medical treatment during the period at issue, other than conservatively treated lumbar spinal stenosis and a knee injury that resulted in surgical repair, does not demonstrate an inability to stand for more than a minute or walk more than few steps." (*Id.* at 10–11.) Consequently, the ALJ determined that "given this inconsistency with the medical evidence, the third-party function report completed by Ms. [V] is generally unpersuasive." (*Id.* at 11.)

In reaching her RFC assessment, the ALJ found Plaintiff's history of conservative treatment[6] for his physical impairments revealed he could perform sedentary work, "provided that

---

[6] Aside from a knee surgery in December of 2023. (*Id.*)

he only occasionally kneels, stoops, crouches, balances on wet, moving, or uneven surfaces, and climbs ramps and stairs." (*Id.*) However, the ALJ concluded Plaintiff's "lumbar and knee impairments preclude climbing ladders, ropes, or scaffolds or working around hazards, including moving mechanical parts or unprotected heights." (*Id.*) Likewise, the ALJ found Plaintiff's "history of conservative outpatient mental health treatment reveals his ability to understand and execute simple, routine tasks that do not involve production requirements and make simple decisions and adapt to occasional changes in essential work tasks." (*Id.*) However, the ALJ reasoned that Plaintiff's "persistent symptoms of [PTSD] and anxiety limit him to occasional contact with co-workers, supervisors, and the public and preclude tasks involving direct customer service." (*Id.*) "Moreover, the symptoms caused by, and treatment necessitated by, all [Plaintiff's] impairments restrict him to work allowing him to be off task 10% of the workday and absent once per month due to his impairments." (*Id.*)

It remains Plaintiff's burden to prove disability. 20 C.F.R. § 404.1512. Plaintiff bears the burden of proof at Steps One through Four of the sequential evaluation process, including the RFC determination. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Louis v. Comm'r Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020) ("[Plaintiff] bears the burden of establishing h[is] RFC . . . ."). A plaintiff's description of their symptoms, however, standing alone, is never sufficient to establish an impairment or disability. 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."); *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) ("[A]n ALJ may not base a finding of disability solely on a claimant's statements about disabling pain . . . ."). Despite objective evidence of record that may show a medically determinable impairment, "[a] diagnosis alone . . . does not demonstrate

disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009); *see also* 20 C.F.R. § 404.1521 ("We will not use . . . a diagnosis . . . to establish the existence of an impairment(s).").

Rather, an impairment must be accompanied by functional limitations severe enough to preclude a claimant from working. *See Jones v. Sullivan*, 954 F.2d 125, 128–29 (3d Cir. 1991). An individual is not required to be symptom-free or experiencing no discomfort to perform work. *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986) ("[W]hile [the plaintiff's] pain may be constant and uncomfortable, it is not disabling or severe."). In reviewing the ALJ's decision, the Court is limited to determining whether the ALJ has applied the correct legal standards and whether the decision is supported by substantial evidence. *See, e.g.*, 42 U.S.C. § 405(g) ("[T]he [C]ourt shall review only the question of conformity with such regulations and the validity of such regulations."); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Sanfilippo v. Barnhart*, 325 F.3d 391, 393 (3d Cir. 2003) (plenary review of legal questions in social security cases). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce*, 487 U.S. at 565 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord Biestek*, 587 U.S. at 102–03. The Court may neither re-weigh the evidence nor substitute its judgment for that of the factfinder. *Rutherford*, 399 F.3d at 552.

The RFC is an administrative finding, not a medical opinion, which the ALJ formulates exclusively based on the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). To the extent an ALJ finds some of a plaintiff's limitations unsupported, the ALJ may exclude them from the RFC assessment. *Salles*, 229 F. App'x at 147 ("[T]he ALJ need

only include in the RFC those limitations which he finds to be credible.").[7] The Third Circuit has found that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006).

Plaintiff's argument that the ALJ failed to consider limitations from his severe and non-severe impairments lacks merit. The ALJ considered all the record evidence, which showed largely normal examination findings, both physical and mental, throughout the relevant period. While Plaintiff testified to having more severe limitations, the ALJ found Plaintiff's testimony inconsistent with his treatment records and largely normal examination findings. The ALJ explained in great detail her analysis of the medical opinion evidence, including the elements of supportability and consistency.

Plaintiff argues the ALJ wrongly rejected his proffered medical opinions, because those opinions have support in the record. (Pl. Br. at 16, 19–20.) But accepting this argument would require the Court to re-weigh the evidence, which it may not do. *See, e.g.*, *Rutherford*, 399 F.3d at 552 ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (citation omitted)). If substantial evidence supports an ALJ's determination, the Court must affirm, even if it "might have reached a different conclusion." *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir.

[7] Because Plaintiff filed her claim after March 27, 2017, the revised regulatory framework applied to the ALJ' s evaluation of the medical evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017). Under the revised framework, an ALJ considers medical opinions when assessing the RFC, but will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Rather, the ALJ assesses the persuasiveness of medical opinions, and in doing so, need only explain how she considered the "most important" factors of consistency and supportability. 20 C.F.R. § 404.1520c(b)(2). In addressing a medical opinion, the ALJ "may" comment on other factors, but generally has no obligation to do so absent special circumstances, which do not exist here. *Id.* Relevant here, "supportability" is the extent that a medical source presents "relevant objective medical evidence and . . . explanation" that supports the medical opinion; and "consistency" is the extent to which the medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(1)–(2).

1986) (quoting *Hunter Douglas*, 804 F.2d at 812). Under the deferential standard of review for Social Security disability determinations, the Court finds that substantial evidence supported the ALJ's evaluation of this case.

Moreover, the ALJ is given great discretion in evaluating a plaintiff's subjective complaints, and his findings are entitled to great deference. *See Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014). It is the ALJ who "has seen the hearing up close." *Biestek*, 587 U.S. at 108. Consequently, the ALJ may discount a claimant's subjective complaints that are unsupported by the evidence. *See* 20 C.F.R. § 404.1529(c)(4). So long as substantial evidence supports the ALJ's conclusion, the Court should afford it "great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App' x 183, 189 (3d Cir. 2007). The ALJ's credibility determination has thus been described as "virtually unreviewable on appeal." *Hoyman v. Colvin*, 606 F. App' x 678, 681 (3d Cir. 2015).

Here, the ALJ based her decision on "more than a mere scintilla" of evidence, enough to meet the substantial evidence standard. *See Biestek*, 587 U.S. at 103; *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."). To override the agency's factual finding, it is not enough that Plaintiff points to evidence that "*supports*" a contrary conclusion: the evidence must "*compel*[]" it. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (emphasis original). Plaintiff has not identified any evidence compelling a contrary result.

Moreover, the ALJ sufficiently developed the administrative record and "scrupulously and conscientiously probe[d] into, inquire[d] of, and explore[d] for all the relevant facts" in consideration of Plaintiff's *pro se* at the hearing. *Key*, 754 F.2d at 1551.

Accordingly, here, remand or reversal is not warranted.

## IV. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

**IT IS SO ORDERED.**

**DATED: 8/18/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**